```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

UNITED STATES OF AMERICA *ex*         *
*rel.* STUART C. IRBY CO.,
                                      *
    Plaintiff,
                                      *
vs.                                            CASE NO. 4:14-CV-47 (CDL)
                                      *
PRO CONSTRUCTION, INC., and
WESTERN SURETY CO.,                   *

    Defendants.                     *

<u>O R D E R</u>

    Defendant Pro Construction, Inc. was awarded a federal contract to build a gas station on Fort Benning, Georgia. Pro Construction subcontracted the electrical work to Defendant Eastway Electric, L.L.C. Eastway failed to pay its materialman, Plaintiff Stuart C. Irby Company ("Irby"). The United States for the use and benefit of Irby brought suit against Eastway for breach of contract and against Defendants Pro Construction and Western Surety Co. for payment under the Miller Act, 40 U.S.C. § 3131 *et seq.* Default judgment was entered against Eastway.

    Irby has now filed a motion for summary judgment (ECF No. 28) on its claims against Pro Construction and Western Surety Co., arguing that it is entitled to recover on its Miller Act claim as a matter of law. Pro Construction and Western Surety Co. respond with a summary judgment motion of their own (ECF No.

29), contending that the undisputed evidence establishes that Irby did not timely notify Pro Construction of its claim and did not have a good faith belief that the materials it supplied were for the work specified in the applicable contract, and thus Irby cannot prevail on its Miller Act claim.  For the reasons set forth below, Irby's motion for summary judgment is granted and Defendants' motion is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The Court will consider each party's motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.  *Am. Bankers Ins. Gr. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

FACTUAL BACKGROUND

In 2012, the United States Army and Air Force Exchange Service awarded Defendant Pro Construction a contract to construct a gas station/convenience store on Fort Benning ("the Project"). Pro Construction furnished a payment bond in connection with the Project, which identified Pro Construction as the principal and Defendant Western Surety as the surety. Pro Construction entered a subcontract with Defendant Eastway Electric, under which Eastway was to provide all labor, material, and equipment for electrical work on the Project. Plaintiff Irby sells electrical materials. Eastway established an open account with Irby in August 2012, allowing Eastway to purchase materials from Irby on credit. Eastway did not fully pay Irby for the materials. Irby is owed an outstanding principal amount of $39,594.08 on sixteen invoices it issued to Eastway pursuant to the open account. The agreement between Eastway and Irby imposed a 1.5% per month service charge on outstanding amounts of any invoice not paid by its due date.

Eastway ordered materials from Irby from approximately March 2013 through June 2013. Each of Irby's invoices indicated that the materials Eastway ordered were to be shipped to "Job Patton Village," the name by which the Project was designated in Irby's accounting system. Irby last furnished materials to Eastway on June 13, 2013. On or about August 28, 2013, Irby

3

served a "Claim Against Payment or Lien Bond" whereby Irby claimed that it is owed $39,545.50 on the Project. Defendants received the Notice of the Claim on September 6, 2013. The Notice (i) identifies the Project, (ii) states that Eastway failed to pay Irby for materials Irby supplied for the Project, (iii) states the principal amount owed to Irby with sufficient specificity, (iv) identifies Pro as the general contractor and Western as the surety, (v) demands payment, and (vi) states that Irby will file suit to recover the amount owed if it is not paid. Irby initiated this action on February 24, 2014 asserting its claims under the bond against Defendants.

Of the sixteen invoices at issue, three cover materials supplied to Eastway after May 19, 2013, the date Defendants allege Eastway certified to Pro Construction that it completed its work on the Project. Irby argues that Eastway's work on the Project continued well after that date. Two invoices cover materials supplied to Eastway on or after June 10, 2013, the date the Project was turned over to its owner. Irby argues that work continued on the Project after that date. The materials Irby supplied to Eastway were shipped to five different addresses. For the invoices dated June 1, June 10, and June 11, 2013, Eastway instructed Irby to deliver the products to Eastway's corporate offices instead of the Project site. While Eastway was working on the Project, it was working on two other

projects including one at Fort Benning, and Irby supplied Eastway with products for those projects while it supplied products to Eastway for the Project. The parties agree that Eastway failed to pay Irby for materials for the Project and that Irby is owed an outstanding balance. The parties disagree, however, on whether Irby satisfied each element of its Miller Act claim such that Defendants are responsible under the payment bond for the amount Eastway owed Irby.

## DISCUSSION

The Miller Act requires a general contractor that is awarded a federal construction contract to furnish a payment bond to protect persons supplying labor and material for the project. 40 U.S.C. § 3131(b)(2); *United States ex rel. Krupp Steel Prods., Inc. v. Aetna Ins. Co.*, 831 F.2d 978, 980 (11th Cir. 1987). "A person having a direct contractual relationship with a subcontractor . . . may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person . . . supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). Irby argues that Pro Construction and Western Surety are liable under the payment bond's terms and the Miller Act for the outstanding principal balance Irby is owed by Eastway.

**I.   Irby's Motion for Summary Judgment**

For Irby to recover under the Miller Act, it must prove "1) that materials were supplied for work in the particular contract at issue; 2) that [it] is unpaid; 3) that [it] had a good faith belief that the materials were for the specified work; and 4) that jurisdictional requisites are met." *Krupp,* 831 F.2d at 980. Irby argues that the current record establishes each of these elements. Defendants respond that the present record demonstrates that Irby did not have a good faith belief that all of the materials for which it seeks payment were provided for the Fort Benning job and that Irby has not met the jurisdictional requirement of providing timely notice of its claims. A plain reading of the present record refutes Defendants' arguments.

**A.   Miller Act's Good Faith Requirement**

As long as Irby had a good faith belief the materials it supplied to Eastway were for the specified work in the contract at issue, "delivery to the job site or actual use in the prosecution of the work is immaterial to a right of recovery." *Id.* The present record reveals that Irby had a practice of ensuring that its accounting systems reflect the correct project for which its customers order materials, and each invoice for which it now seeks payment indicates that the materials were for "Job Patton Village," the Project's designation in Irby's

6

accounting system.  Pl.'s Mot. for Summ. J. Ex. A., McCan Decl. ¶¶ 23-26, ECF No. 28-3.  Each invoice also reflects delivery to either the Project site or Eastway's offices.  *Id.* ¶ 20; McCan Decl. Ex. 3, Invoices and Proof of Delivery, ECF No. 28-3 at 9-58.  The record also shows that Pro Construction agreed that Irby believed the materials were for use on the Project.  *See id.* Ex. B, Hutchinson Dep. 55:4-7, ECF No. 28-4 ("Q: [I]s it Pro's position that Irby knew that Eastway was allegedly using these materials on other projects?  A: No.").

Defendants rely on the following to establish that Irby did not have a good faith belief that the materials were being used for the project in question or that a genuine factual dispute exists on this issue.  First, the Project was turned over and accepted as complete on June 10, 2013, Hutchinson Dep. 15:5-7, and two of Irby's invoices show materials shipped to Eastway on or after that date.  McCan Decl. Ex. 5, ECF No. 28-3.  Second, Irby shipped products to Eastway after May 19, 2013, which is the date it argues Eastway completed its scope of work on the Project.  Hutchinson Dep. Ex. 16, Application for Payment, ECF No. 29-18.  Third, Eastway simultaneously worked on other projects with Irby serving as its supplier, and those projects were not completed on June 10, 2013.  McCan Dep. 27:16-23. Fourth, Eastway instructed Irby to ship materials to multiple addresses that were different from the original shipment address

7

for the Project.  McCan Dep. Ex. 22 at 3, 9, 32, 34, & 38. Fifth, several shipments included materials that had already been incorporated into the Project.  For example, one invoice described ballasts for fluorescent light fixtures, but the light fixtures for the Project came preassembled with ballasts included.  Hutchinson Dep. 44:2-9.  Defendants argue that the item would already have been installed at the Project before the date Irby shipped it to allegedly be used for the Project. Hutchinson Dep. 51:10-20.  Sixth, Irby would have learned that the principals of Eastway had a history of financial problems if it had investigated Eastway's and/or its principals' business practices.  Justen Aff. ¶ 7, ECF No. 31-1.  Defendants allege that Irby failed to seek a personal guarantee, to contact Eastway's bank reference, or to check Eastway's business references.  McCan Dep. 14:24-17:15.  Seventh, Irby admitted that it has no direct evidence that its products went to the Project, but rather stated that it was relying on the "trust" of Eastway.  McCan Dep. 66:7-14.

These facts are not inconsistent with Irby's good faith belief that the materials it supplied to Eastway were being used on the project in question.  Significantly, Defendants arguably admitted Irby's good faith belief under Local Rule 56. Furthermore, Pro Construction testified that Irby did not know that Eastway was allegedly using the materials on other

8

projects. It is also noteworthy that Defendants' speculation about Irby's belief is based on four invoices totaling $479.20. Its arguments do not even apply to the vast majority of the invoices for which Irby seeks payment. Whether Irby evaluated Eastway's credit risk also does not support any inference that it did not believe the materials were being used on the appropriate project. And the fact that Irby was supplying Eastway with materials for other projects does not raise an inference that Irby believed the materials were for those other projects considering that each invoice here was marked "Job Patton Village." Moreover, as to the timing of the shipments and the invoices, Defendants admit that work continued after June 10, 2013 on the Project and that Eastway was on site working after it allegedly submitted its final payment application. Hutchinson Dep. 74:8-11; 95:3-9. Delivery of materials to different locations including Eastway's corporate office also does not suggest that Irby knew the materials were being used for other projects given the uncontradicted testimony from Irby's corporate representative that changes in delivery location are common for construction on military bases and that delivery to a contractor's offices is routine for smaller items that can get overlooked at a busy job site. McCan Dep. 38:15-25. Finally, shipment of materials already incorporated into the Project does not show that Irby knew the items were for a

9

different project, particularly in light of the fact that Eastway indicated that the original lighting fixtures did not work due to architectural changes. McCan Dep. 40:9-41:5.

Even viewing the facts in the light most favorable to Defendants as is required in analyzing Irby's motion for summary judgment, Defendants have not shown a genuine factual dispute exists as to whether Irby had a good faith belief that the materials it supplied were for use in the Project. The record clearly establishes that this element of its Miller Act claim has been met.

### B.  Miller Act's Notice Requirement

The Miller Act requires a supplier with a "direct contractual relationship" with a subcontractor to give written notice to the prime contractor within ninety days from the date on which the supplier "supplied the last of the material for which such claim is made." 40 U.S.C. § 3133(b)(2). Irby produced evidence that it mailed its Notice on September 3, 2013 and that it was received by Pro Construction on September 6, 2013. It is undisputed that Irby last supplied materials to Eastway on June 13, 2013 and that it gave Defendants written notice of its claim within ninety days of that date. Defendants maintain, however, that because Irby supplied materials to Eastway on an open account basis, it was required to provide notice of its claim within ninety days of *each* invoice, which

Irby did not do.

Although some district courts have adopted Defendants' position, no circuit court that has considered the issue has done so. The Court today sides with the circuit courts. *See, e.g, Ramona Equip. Rental, Inc. v. Carolina Cas. Ins. Co.*, 755 F.3d 1063, 1068 (9th Cir. 2014) ("[W]hen there is an open account, a ninety-day notice is timely even when it includes material furnished more than ninety days before the notice."). Irby's notice was timely as a matter of law.

    C.   <u>Accrued Service Charges, Prejudgment Interest, Post-Judgment Interest, and Attorneys' Fees</u>

Irby seeks summary judgment for the undisputed principal amount that Eastway owed on its account plus accrued service charges, pre-judgment interest, and attorneys' fees. Defendants argue that the service charges that Irby seeks are actually interest charges, and therefore, to prevent a double recovery, Irby cannot recover those charges in addition to prejudgment interest. In support of its argument, Defendants rely on a district court decision from the Northern District of Georgia. *See Consol. Container Co. LP v. Package Supply & Equip. Co., Inc.*, No. 1:09-CV-01478, 2009 WL 3365949, * 2 (N.D. Ga. Oct. 19, 2009) The situation here is distinguishable. Irby's account statements make it clear that the service charge is not interest. The "Sales Terms" that are part of Eastway's credit

11

application provide that the customer agrees that the service charge is "to reimburse [Irby] for the additional cost of carrying his delinquent account [] and further, that such charge is not an interest charge . . . ." McCan Decl. Ex. 1, Terms and Conditions of Sale ¶ 3, ECF 28-3. Eastway clearly agreed that the service charge here was not interest. It was designed to cover the cost of having to maintain a delinquent account, and not for the cost of being deprived of the benefit of the outstanding balance. Awarding pre-judgment interest in addition to the agreed upon service charge does not result in a double recovery. Moreover, Defendants have pointed to no authority that would support ignoring the parties' agreement, particularly given the commercial nature of the transaction.

The agreement between Eastway and Irby also provided for the recovery of attorneys' fees. The Eleventh Circuit has held that where a contractual provision between a supplier and subcontractor provides for the recovery of attorneys' fees, the provision is enforceable under the Miller Act as against the general contractor and the surety. *United States ex rel. Se. Mun. Supply Co., Inc. v. Nat'l Union Fire Ins. Co.*, 876 F.2d 92, 93 (11th Cir. 1989), *reh'g* denied, 886 F.2d 1322 (11th Cir. 1989). Therefore, Irby is entitled to recover its attorneys' fees. The court will determine the amount of fees recoverable and whether O.C.G.A. § 13-1-11 limits the amount of those fees

12

when the Court considers Irby's post-judgment motion for attorneys' fees.

### D. Irby's Mitigation of Damages

Defendants argue that Irby is not entitled to recover the amount it seeks because it failed to mitigate its damages. The Court finds this argument unpersuasive. Defendants complain that Irby should have checked the business history and operations of Eastway and its principals; that it failed to follow its own policy for new accounts because it did not obtain personal guarantees from Eastway's owners; and that it should have requested a joint check arrangement with Pro Construction as it had with general contractors on other jobs. But as Irby points out, an obligation to mitigate arises after a contract is breached. Defendants do not explain how alleged failures before the breach here give rise to a mitigation of damages defense.

Defendants also complain that Irby continued to ship materials to Eastway even after Eastway's account was in default. Irby required Eastway to pay its invoices by the end of the month following the month in which the invoice was sent. McCan Dep. 22:10-16. Eastway failed to do so, but Irby continued to ship products to Eastway. McCan Dep. 23:4-24:12. Irby received payment from Eastway on June 5th, 2013 for all of its March invoices. McCan Dep. 21:17-22:3. The current outstanding invoices are dated April 5th through June 11th,

13

2013. The earliest invoice did not become due until May 31st, 2013. Only three of the at-issue invoices were invoiced after that date, and the last was issued less than two weeks after that date. Moreover, Eastway had previously paid its March invoices two months after they were invoiced. The Court finds that this conduct does not preclude Irby's recovery.

Based on the foregoing, Plaintiff's motion for summary judgment is granted. It is undisputed that Plaintiff is entitled to recover the following from Defendants: the outstanding principal balance of $39,594.08; accrued service charges of $14,489.68; prejudgment interest of $3,076.46; post-judgment interest at the legal rate; and reasonable attorneys' fees and costs to be determined after review of Irby's post-judgment motion.

## II. Defendants' Motion for Summary Judgment

Based on the same rationale supporting the Court's granting of Plaintiff's motion for summary judgment, the Court denies Defendants' motion for summary judgment.

## CONCLUSION

Irby's Motion for Summary Judgment (ECF No. 28) is granted, and Defendants' Motion for Summary Judgment (ECF No. 29) is denied. The Clerk shall enter judgment in favor of Stuart C. Irby Co. and against Pro Construction, Inc. and Western Surety Co., jointly and severally, as follows:

(i)     the principal balance of $39,594.08,

(ii)    accrued service charges of $14,489.68,

(iii)   prejudgment interest of $3,076.46, and

(iv)    post-judgment interest that will accrue at the legal rate.

Plaintiff is also entitled to recover its attorneys' fees and shall file its motion for attorneys' fees pursuant to the Court's Local Rules and other applicable law.

       IT IS SO ORDERED, this 15th day of June, 2015.

                              _S/Clay D. Land
                              CLAY D. LAND
                              CHIEF U.S. DISTRICT COURT JUDGE
                              MIDDLE DISTRICT OF GEORGIA